IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| **SUE F. STANLEY** and **CHARLES S. STANLEY**, | : : : |
| Plaintiffs, | : NO._____ : : |
| vs. | : : |
| **DENVER MATTRESS CO., LLC**, a Colorado limited liability company, | : : : |
| Defendants. | : : |

**COMPLAINT AND JURY DEMAND**

Plaintiffs, by and through counsel, allege as follows:

1. Plaintiffs Sue F. Stanley ("Mrs. Stanley") and Charles S. Stanley ("Mr. Stanley") are residents of the State of Georgia. Plaintiffs have been at all relevant times a married couple.

2. Denver Mattress Co., LLC ("DMC") is a Colorado limited liability company. The principal place of business of DMC is not within the State of Georgia.

3. This Court has subject matter jurisdiction to adjudicate this action pursuant to U.S.C.A. 28 § 1332(a)(1), because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

4. Venue is properly laid in the Eastern District of Tennessee because the alleged tortious acts and omissions and the injuries complained of occurred in this District.

5. On October 22, 2018, and at all relevant times prior thereto, DMC operated, managed and maintained a store for retail sales of beds and related furnishings.

6. DMC's retail floor space (hereinafter referred to as the "Premises") occupies the middle one-third of a building at 2109 Storage Street in Chattanooga, Tennessee.

7. DMC had legal duties to operate, manage and maintain the Premises in a reasonably safe manner and condition, but failed to do so, as described below.

8. The floor plan of the Premises included a carpeted customer aisle in the shape of a pentagon. Merchandise was situated both inside and outside the customer aisle.

9. There was a single electrical outlet situated in the customer aisle.

10. The single outlet was not flush with the level of the floor, but partially protruded above it.

11. The protruding electrical outlet rendered the Premises defective, unsafe, dangerous and hazardous, because it created an unreasonable risk of injury or death to customers who would foreseeably trip on the electrical outlet, lose their balance, and fall.

12. On or about October 22, 2018, Mrs. Stanley and Mr. Stanley, entered the Premises to shop. The store manager greeted them near the front entrance, asked them to describe the type of bed they were interested in purchasing and then led them toward the part of the store where those types of beds were on display.

13. The path taken by the store manager led Mr. and Mrs. Stanley directly through the area of the customer aisle in which the outlet was protruding from the carpet.

14. Through no fault of her own, Mrs. Stanley tripped on the protruding electrical outlet, lost her balance and fell to the floor.

15. Mrs. Stanley's fall was the direct and proximate result of the negligence of DMC at its corporate management level and the negligence of one or more of its employees for which it is legally responsible under the doctrine of *respondeat superior.* The negligence

2

Case 1:21-cv-00295-TAV-CHS   Document 1   Filed 12/01/21   Page 2 of 5   PageID #: 2

of DMC and its employees included, without limitation, the following:

(a) Locating the outlet in the customer aisle where it constituted a trip hazard;

(b) Locating an outlet in the customer aisle which was not suitable for high traffic areas;

(c) Locating an outlet in the customer aisle for superfluous, inconsequential convenience, to wit: to obviate the few seconds it would take an employee to unplug and re-plug the vacuum cleaner to reach one area of the floor;

(d) Maintaining the outlet in a manner in which it protruded above the level of the carpeted floor;

(e) Failing to inspect the outlet at reasonable intervals;

(f) Failing to replace the outlet cover when, before it tripped Mrs. Stanley, DMC employees observed or should have observed that one of its edges had been broken off and one of the doors protecting two of its four receptacles was missing;

(g) Leading Mrs. Stanley over the protruding, broken outlet while pointing out merchandise and distracting her attention;

(h) Failing to warn Mrs. Stanley of the trip hazard;

(i) Failing, at the corporate level, to develop and enforce policies to instruct and train employees to recognize, report, remove or warn against defective, unsafe, dangerous or hazardous conditions existing in its stores;

(j) Failing, at the corporate level, to investigate customer injuries and remedy dangerous conditions, as in this case in which: (i) the store manager witnessed Mrs. Stanley fall and strike her knee, rendering her unable to

stand; (ii) the store manager filled out a formal INCIDENT REPORT, while waiting for an ambulance to arrive; (iii) the store manager stated in the INCIDENT REPORT, "Mrs. Stanley tripped over our outlet panel on our showroom floor and injured her knee; (iv) the INCIDENT REPORT contained a legend stating, "SUBMIT COMPLETED FORM TO GREGORY A. RUEGSEGGER, GENERAL COUNSEL AT LEGAL DEPARTMENT;" (v) the store manager emailed the INCIDENT REPORT to DMC's legal department before the ambulance carried Mrs. Stanley from the Premises; (vi) DMC conducted no meaningful investigation; (vii) the email was received by the DMC Legal Department; (viii) the DMC Legal Department did not conduct an investigation; (ix) without forenotice to Mrs. Stanley's attorney, from whom DMC had already received a letter of representation, DMC spoliated the broken outlet cover by replacing it without documenting its condition or retaining it, when, at the time, the store manager in fact contemplated a legal claim on behalf of Mrs. Stanley against DMC; and

(k) Otherwise failing to exercise due care to render the Premises reasonably safe for customers, including Mrs. Stanley.

16. As a direct and proximate result of her fall, Mrs. Stanley has sustained and will sustain in the future, injuries, damages and losses which include, but are not limited to, some or all of the following:

(a) Serious bodily injuries;

(b) Physical impairment and disability;

(c) Physical pain and suffering;

4

(d) Mental and emotional pain and suffering;

(e) Loss of capacity for the enjoyment of life;

(f) Loss of income and earning capacity; and

(g) Medical, rehabilitation and medication expenses.

17. As the direct and proximate result of the injuries and losses sustained by Mrs. Stanley, Mr. Stanley has lost, and will likely lose in the future, material aspects of Mrs. Stanley's consortium and services.

WHEREFORE, Plaintiffs pray as follows:

(a) That the Court enter judgment in favor of Mrs. Stanley and against DMC under the law and facts, and in the jury's good conscience, to adequately her for her injuries, damages and losses;

(b) That the Court enter judgment in favor of Mr. Stanley and against DMC to compensate him for the loss of Mrs. Stanley's consortium; and

(c) That the Court award Plaintiffs pre-judgment interest, court costs and such other or different relief as to which they may be entitled or which the Court otherwise deems just and proper.

<u>JURY DEMAND</u>

Plaintiffs demand a jury trial with respect to all issues triable by jury.

s/ Ira M. Long, Jr.
Ira M. Long, Jr. (BPR No. 22411)
Weill & Long, PLLC
200 West M.L.K. Blvd, Suite 1205
Chattanooga, TN 37402
Telephone: 423-756-5900
Facsimile: 423-756-5909
Email: ilong@wlattorneys.com
Attorneys for Plaintiffs
