UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

SUE F. STANLEY and
CHARLES S. STANLEY,                    )
                                       )
            Plaintiffs,                )
                                       )
v.                                     )        No.:   1:21-CV-295-TAV-CHS
                                       )
DENVER MATTRESS CO., LLC,              )
                                       )
            Defendant.                 )

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion for summary judgment [Doc. 29]. Plaintiffs have responded [Doc. 35] and defendant has replied [Doc. 39]. Both parties have filed additional supplements [Docs. 46, 48, 59, 60]. For the reasons that follow, defendant's motion for summary judgment [Doc. 29] will be **GRANTED**, and this case will be **DISMISSED**.[1]

## I.      Background

Plaintiffs Sue and Charles Stanley (hereinafter referred to as "Mrs. Stanley" and "Mr. Stanley," respectively), a married couple, bring this premises liability action after Mrs. Stanley tripped and fell at defendant's Chattanooga mattress store [Doc. 1].

---

[1] The Court notes that, in its motion, defendant contends that it is not liable for negligent design and construction [Doc. 30, p. 23]. Plaintiffs respond that they are not suing for negligent design or installation [Doc. 35, p. 16]. Based on this representation, the Court does not construe the complaint to contain any claim of negligent design or installation, and will not address any such purported claim.

Plaintiffs contend that Mrs. Stanley tripped over an electrical outlet cover that protruded above the carpet in the floor of the store [*Id.*].

The evidence shows that on October 22, 2018, Mr. and Mrs. Stanley went to defendant's mattress store to shop for a new mattress [Doc. 35-1, p. 2; Doc. 35-5, p. 2]. William Waters was working at defendant's store when Mr. and Mrs. Stanley arrived [Doc. 29-3, pp. 3–4]. The Stanleys walked into the front of the store, and Waters began conversing with them about the type of mattress they were looking for [*Id.* at 4; Doc. 29-5, p. 3]. After asking a few questions, Waters began walking the Stanleys toward the back of the store, to look at a particular type of mattress [Doc. 29-3, p. 4]. Mr. Stanley was following directly behind Waters, and Mrs. Stanley was following directly behind Mr. Stanley [Doc. 29-5, p. 11; Doc. 29-6, p. 3]. Mrs. Stanley testified that she took approximately three steps following behind Waters and Mr. Stanley before she fell [Doc. 29-5, pp. 5, 11].

After she fell, Mrs. Stanley was screaming and asking "what did I trip over" [*Id.* at 5–6]. Mr. Stanley attempted to explain the outlet cover to Mrs. Stanley, which he believed she tripped over, although he did not see her trip [*Id.* at 6; Doc. 29-6, pp. 7–8]. However, Mrs. Stanley did not understand Mr. Stanley's explanation about the outlet cover, and, as a result, Mr. Stanley took a photograph of the outlet cover to show her [Doc. 29-5, p. 6; Doc. 29-6, pp. 7–8]. Mrs. Stanley stated this was the first time she learned of the existence of the outlet [Doc. 29-5, p. 6].

2

Mrs. Stanley did not see the electrical outlet cover in the floor before her fall [*Id.* at 5]. She stated that she believes the outlet is what caused her to fall because, as she was following Waters, "it felt like I hit a speed hump as we walked. Next thing I knew, I was falling" [*Id.*]. Waters saw Mrs. Stanley starting the motion of falling in his peripheral vision but did not see Mrs. Stanley's foot contact anything on the floor [Doc. 29-3, pp. 6–7]. Mr. Stanley did not see Mrs. Stanley fall, because he was following Waters and had his back to Mrs. Stanley [Doc. 29-6, pp. 3, 9]. As a result, Mr. Stanley acknowledged that he does not know for certain that his wife tripped over the outlet cover [*Id.* at 7].

After the accident, Waters filled out an incident report and sent it to the legal department [Doc. 35-2, p. 8]. In the incident report, Waters described that "Mrs. Stanley tripped over our outlet panel on our showroom floor and injured her knee" [Doc. 35-5, p. 2]. Waters acknowledged that the incident report stated that Mrs. Stanley tripped over the outlet cover, and this was based on his own personal knowledge, not information he was given by Mrs. Stanley [Doc. 35-2, p. 9]. However, Waters stated that he could not say that she tripped over the outlet for sure because he did not physically see it [Doc. 35-2, pp. 10, 32]. Mr. Stanley stated that, in the course of collecting their information for the report, Waters suggested that the accident was the company's "responsibility" or "liability" [Doc. 35-4, p. 7].

Upon reviewing photos of the outlet cover at her deposition, Mrs. Stanley agreed that the outlet cover was clearly visible and was a different color than the surrounding carpet [Doc. 29-5, p. 8]. She stated that she was not aware of anything that would have

3

prevented her from seeing the outlet cover prior to her fall [*Id.* at 9]. She also stated that the outlet cover was small enough that she could have stepped over it without difficulty [*Id.* at 10]. Likewise, Mr. Stanley admitted that the outlet cover was clearly visible and was a different color than the surrounding carpet [Doc. 29-6, p. 4]. Mr. Stanley also acknowledged that nothing prevented someone from seeing the outlet if they were looking at the floor, and that it could have been avoided if seen [*Id.* at 5–6].

The evidence further shows that, since its opening in 2007, there had been no prior falls at the mattress store or any falls caused by the outlet cover at issue in this case [Doc. 29-3, p. 16; Doc. 29-4, p. 2].

## II.     Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party can satisfy this burden by presenting affirmative evidence that negates an element of the nonmoving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

4

To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986)). A party opposing a Rule 56 motion has the duty to affirmatively present and point out *specific evidence in the record* sufficient to justify a jury decision in her favor. *See* Fed. R. Civ. P. 56(c)(1); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989); *Anderson*, 477 U.S. at 256. The nonmoving party cannot simply rely on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. And merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248; *accord McLemore v. Gumucio*, 619 F. Supp. 3d 816, 823 (M.D. Tenn. 2021).

## III. Analysis

### A. Evidentiary Issues

Before delving into the substantive arguments raised by the parties, the Court must address defendant's objections to evidence plaintiffs have provided in opposition to

5

summary judgment, namely (1) the recording and transcript of a phone call with Elijah Freebairn, and (2) plaintiffs' counsel's affidavit.[2]

## 1. Freebairn Recording

### a. Hearsay

Defendant objects to plaintiffs' reliance on the audio recording and uncertified transcript of a phone call purportedly between plaintiffs' counsel, Ira Long, and electrician Elijah Freebairn ("Freebairn Recoding") [Doc. 39, p. 2]. Defendant contends that the best method of obtaining evidence from a fact witness is by deposition with all parties present, but plaintiffs have made no effort to depose Freebairn, and instead, have sought to rely on the "secret" recording [*Id.*]. Defendant argues that the Freebairn Recording is unsworn, unauthenticated hearsay and contains hearsay within hearsay [*Id.* at 2–3].[3]

### i. First Set of Supplemental Briefs

The Court specifically ordered plaintiffs to respond to all evidentiary issues raised in defendant's summary judgment motion no later than August 18, 2023 [Doc. 42]. Plaintiffs filed a brief on August 18, but failed to address the Freebairn Recording [Doc. 46]. Subsequently, on August 21, 2023, after the Court's deadline had expired, plaintiffs

---

[2] Defendants also objected to the consideration of the expert testimony of Mark Williams in addressing summary judgment. However, United States Magistrate Judge Christopher H. Steger subsequently granted a motion to exclude Williams's testimony [Doc. 55]. Accordingly, the Court need not revisit that issue, and will not consider Williams' testimony in ruling on summary judgment.

[3] Defendant also questioned plaintiffs' ability to authenticate the Freebairn Recording. However, because the Court finds that the contents of this recording are inadmissible hearsay, the Court declines to address this argument.

6

filed an "addendum" to their supplemental brief, addressing, for the first time, the Freebairn Recording [Doc. 48].

As the Eastern District of Kentucky has noted, "deadlines are important things. And when the Court establishes deadlines, the parties are obliged to follow them. If a party attempts to file an untimely motion, the Court will not blithely grant it without considering the reasons for the delay." *Century Indemnity Co., v. Begley Co.*, 323 F.R.D. 237, 239 (E.D. Ky. 2018). Plaintiffs have provided no explanation for their untimely filing of an "addendum" addressing this matter for the first time. Instead, they simply state that their timely-filed supplemental brief was "incomplete" [Doc. 48, p. 1]. Moreover, plaintiffs did not seek an extension of time for filing of their supplemental brief to address all issues ordered by the Court prior to the expiration of that deadline. Accordingly, the Court finds that it would be appropriate to exclude plaintiffs' "addendum" from consideration for failure to comply with the Court's orders.

Regardless, even in their belated filing, plaintiffs do not specifically address defendant's hearsay argument, but rather, argue that the Freebairn Recording establishes a disputed issue of material fact, and defendant has not established that the recording is

inauthentic or untrustworthy[4] [Doc. 48, pp. 2–6]. But these arguments do not go to whether Freebairn's statements in the call are hearsay.[5]

### ii. Second Set of Supplemental Briefs

After the filing of these briefs, the Court stayed this case pending a ruling on a *Daubert* motion [Doc. 50]. Once a ruling had been issued [Doc. 55], and the stay lifted [Doc. 56], the Court, on August 5, 2024, ordered the parties to file any supplements regarding the issue of Freebairn's deposition in light of the procedural history of the case [Doc. 57].[6]

In a supplemental brief, defendant states that, despite being granted additional time to do so, plaintiffs have still not deposed Freebairn [Doc. 59, pp. 1, 3].

In their supplemental brief, plaintiffs assert, for the first time, that the Freebairn's Recording is non-hearsay under Rule 801(d)(2)(B) because defendant manifested that it adopted or believed Freebairn's statements to be true by relying on an affidavit signed by

---

[4] The Court notes that the burden of establishing that evidence is admissible is on the party offering the evidence, not the party challenging the admissibility of evidence. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

[5] The Court notes that the residual exception under Federal Rule of Evidence 807 does address the admission of hearsay based on "sufficient guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). However, "Rule 807 should only be used sparingly[.]" *Deere & Co., v. FIMCO, Inc.*, 260 F. Supp. 3d 830, 844 (W.D. Ky. 2017) (internal quotation marks omitted). But plaintiffs do not cite the residual exception or make any specific arguments about the applicability of the rule, and the Court will not construe their reference to trustworthiness as seeking application of the residual exception.

[6] Specifically, after the briefing on the motion for summary judgment had concluded, Judge Steger granted a brief extension of the discovery deadline for the limited purpose of deposing Freebairn [Doc. 49]. The Court thus permitted the parties to file additional supplemental briefs specifically to address any impact of Freebairn's deposition testimony on the parties' positions on summary judgment [Doc. 57].

Freebairn ("Freebairn Affidavit"), in which he acknowledged his prior statements to Attorney Long [Doc. 60, pp. 3–4; *see also* Doc. 48-3].  Plaintiffs also argue that the Freebairn Recording is "akin to a past recollection recorded" [*Id.* at 4].

The Court is troubled that plaintiffs waited until their post-stay supplemental brief [Doc. 60], filed on August 13, 2024, more than a year after the hearsay issue was first raised and almost exactly a year since the Court-imposed deadline for responding to this issue [*see* Doc. 42], to *ever* address the hearsay issue.  And, in doing so, their supplemental brief exceeded the bounds of the Court's order permitting supplemental briefs, which merely permitted either party to "supplement their briefing . . . in light of Mr. Freebairn's deposition" [Doc. 57].

In light of this failure to timely and appropriately respond to the hearsay issue, the Court finds it would be appropriate to disregard plaintiffs' belated argument on this matter.  And doing so would lead the Court to the conclusion that plaintiffs have not met their burden of establishing that the Freebairn recording is admissible.  Once again, plaintiffs, as the proponent of the Freebairn recording, bear the burden of proving that it falls within a hearsay exception or exclusion.  *See Kendrick*, 853 F.2d at 496 n.3.

### iii.     Rule 801(c)

Although evidence submitted at the summary judgment stage need not be in a form that is admissible at trial, the party offering the evidence must be able to show that the evidence will be offered in an admissible form at trial to defeat summary judgment. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  Accordingly, hearsay

9

evidence must be disregarded at the summary judgment stage. *Id.* A statement is hearsay when: "(1) the declarant does not make [it] while testifying at the current trial or hearing; and (2) a party offers [it] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is inadmissible when it does not fall within a relevant exception or exclusion to the hearsay rule. *See Kendrick*, at 496 n.3 ("[T]he proponent of a hearsay statement bears the burden of proving that the statement fits squarely within a hearsay exception or exclusion").

All of Freebairn's statements during the phone call are out-of-court statements, as they were not made under oath during the course of this litigation. Accordingly, whether Freebairn's statements are hearsay depends on whether such statements are offered for the truth of the matter asserted. A review of the brief recorded phone call indicates that all of Freebairn's relevant statements during this phone call are offered for the truth of the mater asserted. For example, Freebairn states that he replaced the outlet cover that is the subject of this litigation in April 2019 [Doc. 35-10, p. 1]. He described that the plastic cover for the receptacle was broken. Freebairn explained that someone at Denver Mattress Company had informed him that the damage to the plastic cover likely came from the cleaning crew vacuuming over it, and Freebairn opined that the plastic cover seemed to be sticking up a little high [*Id.*]. Freebairn estimated that the plastic cover was sticking up somewhere between one-quarter to one-half inch from the floor [*Id.* at 2]. Freebairn joked that "if you were walking through that store barefoot you'd have snapped a toe off on that thing, ya know. It was sticking up pretty good" [*Id.* at 3]. All of this

10

information is clearly presented for the truth of the matter asserted in this litigation—to prove that the outlet cover protruded above the floor and that it presented a danger. Accordingly, these statements meet the definition of hearsay under Rule 801(c).

Although the Court finds it would be appropriate to decline to address plaintiffs' belated arguments on the hearsay issue, for the reasons explained *supra*, the Court will nonetheless address those arguments and explain why they are meritless.

### iv.    Rule 801(d)(2)(B)

Plaintiffs argue that Freebairn's statements fall within Rule 801(d)(2)(B)'s exemption of certain statements that, although otherwise meet the definition of hearsay, are not hearsay for purposes of the Rules [Doc. 60, pp. 3–4]. Rule 801(d)(2)(B) indicates that a statement is not hearsay when it is "offered against an opposing party" and "is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2). The burden is on the proponent of the evidence to "show that the party heard the statement, understood the statement, was able to respond to the statement, and had the motive and opportunity to respond – i.e[.], the statement was made under circumstances reasonably calling for an answer." *KAM Dev., LLC v. Marco's Franchising, LLC*, No. 3:20-cv-2024, 2024 WL 87758, at *10 (N.D. Ohio Jan. 5, 2024) (quoting *Huck v. Greenspan*, No. 06-CV-14562, 2009 WL 224682, at *9 (E.D. Mich. Jan. 30, 2009)). "[T]he mere fact that the party has acted (or failed to act, in the case of an admission by silence) in some way in reference to the statement or information (as by repeating it or retaining it) is not sufficient, standing alone, to justify a finding that there has been an

11

adoption." *White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1062 (W.D. Mo. 1985).

"A statement is admissible as an adoptive admission only if the party against whom it is offered has specifically adopted that statement as its own." *Pernix Ir. Pain Dac v. Alvogen Malta Operations Ltd.*, 316 F. Supp. 3d 816, 824 (D. Del. 2018). The District of Delaware has held that an expert witness's statements "will be regarded as an adoptive admission and thus not hearsay as to the retaining party if the circumstances in which the statement is made, used, or proposed to be used indicate that the party supports the statement as representing its position." *Id.* Nonetheless, that court concluded that designating individuals as experts, serving reports from them, making them available for deposition, and designating them as trial witnesses was insufficient to show that the party adopted any specific statement contained in the expert reports. *Id.* at 825.

Similarly, in this Circuit, the Eastern District of Michigan found a statement to be an adoptive admission under Rule 801(d)(2)(B) when the party provided that information to their expert witness for inclusion in his analysis. *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, 789 F. Supp. 2d 777, 782 (E.D. Mich. 2011). However, the court noted that, in invoking this theory of admissibility, it emphasized that it was not the use of the statement by the expert that gave rise to an adoptive admission, but rather, the "focus here—like the focus in Fed.R.Evid. 801(d)(2)(B)—is on conduct by the ***party***[.]" *Id.* at 785 (emphasis in original). The court explained that, for purposes of Rule 801(d)(2)(B), "it is not enough that an opposing party's admission 'merely repeats' the underlying

12

hearsay; rather, the party must actually make use of the hearsay in a manner that manifests a belief in its trustworthiness, or otherwise reflects the party's incorporation of the substance of the hearsay into a statement that the party itself either made or authorized." *Id.* at 780 (internal quotation marks and alterations omitted).

Plaintiffs' theory of adoption in this case is hazy at best. Plaintiffs argue that in March 2021, they sought a continuance in state court to obtain Mr. Freebairn's deposition, and defendant opposed this request "based in large part on the Freebairn Affidavit, which it filed in state court and by which it represented that Mr. Freebairn had no relevant evidence, because he had no relevant memory of the outlet" [Doc. 60, p. 4]. Plaintiffs argue that "[i]n doing so, [defendant] manifested that it adopted the Freebairn Affidavit and believed it to be true. [Defendant] introduced the entirety of the Freebairn Affidavit in state court, not part of it, thereby manifesting that it adopted and believed all of it to be true" [*Id.*].

First, the Court finds that plaintiffs have not met their burden of establishing that the Freebairn Recording could be deemed an adopted admission under Rule 801(d)(2)(B) because, although they base their argument on the contents of defendant's response to a motion to continue in the state court proceeding, they have not attached a copy of this response to their supplemental brief, nor is a copy of this response already on the Court's docket. As a result, there is no evidence before the Court to confirm what defendant may or may not have argued in their response, and the Court therefore cannot determine whether that response "adopted" the contents of the Freebairn Affidavit.

13

Moreover, even if the Court were to accept as true plaintiffs' representation of the contents of defendant's state court response brief, the statement from the Freebairn Affidavit upon which defendant purportedly relied was: "I told Mr. Long what I remembered about the electrical outlet cover at Denver Mattress" [Doc. 48-3, p. 2]. Plaintiffs recharacterize this statement as "representing that the statements [in the Freebairn Recording] were true" [Doc. 60, p. 4]. As a result, plaintiffs ask the Court to deem defendant having admitted that the statements in the Freebairn Recording are true and accurate [*See id.*]. But it would require several leaps to turn Freebairn's statement in his affidavit that he told Attorney Long what he remembered to an admission by defendant that every statement in the Freebairn recording was true. The Court finds no support for such under Rule 801(d)(2)(B).

The Court accordingly finds that, even if it were to accept plaintiffs' belated argument that the Freebairn Recording is non-hearsay under Rule 801(d)(2)(B), plaintiffs have not met their burden of establishing that the Freebairn Recording is an adopted admission of the defendant.

### v. Rule 803(5)

Notably, plaintiffs never specifically reference Rule 803(5), but merely state in their post-stay supplemental brief that the Freebairn Recording is "akin to past recollection recorded" [Doc. 60, p. 4]. However, to the extent that this argument can be construed as a claim that the Freebairn Recording falls under the hearsay exception in

14

Rule 803(5), plaintiffs have not met their burden of establishing that the exception applies.

Rule 803(5) provides for a hearsay exception for recorded recollections when the record "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Fed. R. Evid. 803(5). But Rule 803(5)'s purpose is to permit the use of evidence, regardless of its admissibility, to refresh a witness's recollection. *Sfakianos v. Shelby Cnty. Gov't*, No. 08-cv-2172, 2010 WL 4791680, at *10 (W.D. Tenn. Aug. 2, 2010). Thus, "[a]lthough [Rule] 803(5) provides the proponent a method by which to refresh her memory, the rule itself 'does not provide an avenue for admission.'" *Id.* (quoting *Bondie v. Bic Corp.*, 947 F.2d 1531, 1534 (6th Cir. 1991)).

Plaintiffs have not established that the Freebairn Recording is "on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately." *See* Fed. R. Evid. 803(5). Plaintiffs seem to believe that, in his affidavit, Freebairn "disavowed any memory of the condition of the outlet" [Doc. 60, pp. 3–4]. But at no point in his affidavit does Freebairn claim to have no memory of the condition of the outlet cover at issue. In his affidavit, Freebairn stated that he could not recall the date he was at Denver Mattress, could not recall if he returned to Denver Mattress to physically replace the outlet cover, and did not have any knowledge of anyone tripping over the outlet cover [Doc. 48-3, p. 1]. However, he states that he "told Mr. Long what

15

[he] remembered about the electrical outlet cover" [*Id.* at 2]. Given that Freebairn does not claim that he does not remember the condition of the outlet cover, Rule 803(5) is clearly inapplicable.

### iv.    Conclusion

Ultimately, plaintiffs have not met their burden of setting forth any relevant hearsay exemption or exception under which Freebairn's recorded statements could be admitted. Therefore, the Court will not consider Freebairn's statements in ruling on the present motion for summary judgment.

### b.    Rule 56(d) Request

Apparently in anticipation of this ruling, plaintiffs appear to request that the Court defer ruling on the instant summary judgment motion until Freebairn's deposition can be taken [Doc. 48]. Plaintiffs indicate that a deposition of Freebairn had been scheduled for August 3, 2023, but had to be cancelled due to a family emergency on the part of plaintiffs' counsel [*Id.* at 2]. Plaintiffs state that defendant would not agree to reschedule the deposition after the discovery deadline of August 16, 2023, and plaintiffs intend to bring this issue before Judge Steger. Accordingly, they request that the Court defer resolution of this summary judgment motion until after Freebairn has been deposed [*Id.*].

Under Rule 56(d) of the Federal Rules of Civil Procedure, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any

other appropriate order." Whether or not to grant a request for additional discovery falls within the trial court's discretion. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 426 (6th Cir. 2009).

The Sixth Circuit has held that the filing of an affidavit complying with Rule 56(d) is essential. *Burnett v. Herron*, No. 18-cv-12471, 2023 WL 2712476, at *5–6 (E.D. Mich. Mar. 30, 2023) (quoting *Unan v. Lyon*, 853 F.3d 279, 292–93 (6th Cir. 2017)). But, if a party does not satisfy Rule 56(d)'s technical requirements, he must, at least, demonstrate that the discovery sought would enable him to adequately oppose the motion for summary judgment. *Id.* at *6 (citing *United States v. Rohner*, 634 F. App'x 495, 504 (6th Cir. 2015)).

In determining whether relief under Rule 56(d) is warranted, the Court considers (1) when the nonmovant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would potentially alter its ruling; (3) how long the discovery period has lasted; (4) whether the nonmovant was dilatory in its discovery efforts; and (5) whether the movant was responsive to discovery requests. *Cline v. Dart Transit Co.*, 804 F. App'x 307, 312 (6th Cir. 2020); *see also Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995). However, the "main inquiry is whether the moving party was diligent in pursuing discovery." *Cline*, 804 F. App'x at 313 (internal quotation marks omitted).

First, plaintiffs' request to defer ruling on the pending summary judgment motion is not procedurally proper under Rule 56(d). Plaintiffs have not filed an affidavit or

declaration in support of their request. Indeed, they have not even specifically filed a motion for relief under Rule 56(d) but have merely raised this issue for the first time in an untimely addendum to a Court-ordered supplemental brief. The Court finds that it could decline to address plaintiffs' Rule 56(d) request on this ground alone.

Nevertheless, the Court finds that plaintiffs have not been diligent in pursuing the relevant discovery, that is, the deposition of Freebairn. The record reflects that plaintiffs first filed suit regarding this matter in state court on or about October 18, 2019 [Doc. 9-1, p. 1]. Defendant filed a motion for summary judgment in that action on or about December 4, 2020 [*Id.* at 2]. Subsequently, in March 2021, defendant sought to exclude Freebairn's testimony from that proceeding [*Id.*]. In April 2021, the state court gave plaintiffs until May 28, 2021, to complete depositions [Doc. 15-7, pp. 1–2]. However, plaintiffs did not obtain Freebairn's deposition, and the state court excluded Freebairn's recorded statement and affidavit as hearsay under the Tennessee Rules of Evidence [*Id.* at 2]. On July 16, 2021, plaintiffs voluntarily dismissed the state court action [Doc. 9-1, p. 10; Doc. 15-9]. Plaintiffs subsequently filed the instant complaint on December 1, 2021 [Doc. 1].

In their response to defendant's motion to dismiss this federal action, filed on February 18, 2022, plaintiffs represented that Freebairn's testimony was "crucial," but he had become an "unwilling witness[,]" and plaintiffs "may not succeed in deposing him if they have to rely on Texas procedural rules[,]" but "[i]n this Court, Plaintiffs have the benefit of nationwide service of subpoenas pursuant to F.R.C.P. 45" [Doc. 13, p. 4].

18

Plaintiffs cited the need to subpoena Freebairn as "[t]he main tactical consideration" for their decision to voluntarily dismiss the state court action and refile in federal court [*Id.* at 9–11]. In their Rule 26(f) discovery plan, plaintiffs stated they wished to take additional discovery "most importantly the deposition of Elijah Freebairn" [Doc. 25, p. 2]. The Court accepted plaintiffs' representation that they refiled this action in federal court to take advantage of the subpoena powers of the federal court and, accordingly, could not find that the nonsuit of the state court action and refiling in federal court "is a blatant instance of forum shopping" [Doc. 31, p. 10]. The Court thus denied defendant's motion to dismiss [Doc. 31].

On September 7, 2022, defendant filed its motion for summary judgment in this action [Doc. 29]. While this motion was pending, the Court stayed this action, ordering the parties to mediate [Doc. 32]. On April 20, 2023, the Court lifted the stay [Doc. 34], in response to the final report of the mediator indicating that the case did not settle [Doc. 33]. On May 11, 2023, plaintiffs responded to the pending motion for summary judgment, relying, again, on Freebairn's recorded phone call, rather than a deposition [Doc. 35]. At no point in their response did plaintiffs mention needing additional time to respond to obtain Freebairn's deposition [*Id.*].

On June 2, 2023, defendant filed its reply brief, raising this challenge to the Court's consideration of Freebairn's recorded phone call statements [Doc. 39]. In this brief, defendant represented that plaintiffs had not attempted to depose Freebairn [Doc. 39, p. 2]. On August 8, 2023, the Court ordered plaintiffs to respond to this and other

evidentiary matters [Doc. 42]. As noted previously, plaintiffs untimely responded regarding this matter on August 21, 2023 [Doc. 48]. In support of their position, plaintiffs attached a notice of deposition, indicating that a deposition of Freebairn was scheduled for August 3, 2023 [Doc. 48-2, p. 1]. This document indicates that it was served on July 21, 2023 [*Id.* at 2]. The attached subpoena, prepared by plaintiffs' counsel, is dated July 19, 2023 [*Id.* at 3]. Plaintiffs also attach attempted communications with Freebairn regarding scheduling a deposition in February 2021 [Docs. 48-4, 48-5], before the filing of this federal action [*See* Doc. 1].

Moreover, after this summary judgment motion had been fully briefed, Judge Steger granted a limited extension of the discovery deadline for purposes of taking Freebairn's deposition [Doc. 49]. Judge Steger ordered that Freebairn's deposition should be taken as soon as possible but no later than September 29, 2023 [*Id.*]. But, in light of the post-stay briefing [Docs. 59, 60], it is clear that plaintiffs did not take Freebairn's deposition, despite the extension of time to do so, and plaintiffs have not even alleged that they attempted to take Freebairn's deposition during this extended discovery period.

It is clear that plaintiffs have been well aware, since at least April 2021, when the state court granted additional time to obtain Freebairn's deposition [Doc. 15-7, pp. 1–2], that the deposition would be necessary. However, plaintiffs have provided no evidence that they took any steps to depose Freebairn between the state court's April 2021 order

20

and the filing of defendant's reply brief to the instant summary judgment motion, in June 2023, challenging plaintiffs' reliance on the Freebairn Recording.

The Court is particularly troubled that, in February 2022, plaintiffs represented to the Court that obtaining Freebairn's deposition was the primary tactical reason for their nonsuit of the state court action and refiling in federal court [Doc. 13], yet they waited nearly a year and a half, until July 2023 [Doc. 48-2], to ever seek Freebairn's deposition. And the Court notes that plaintiffs did not obtain the subpoena for Freebairn's deposition until July 19, 2023 [Doc. 48-2, p. 3], less than a month before the August 16, 2023, discovery deadline, and after the expiration of the dispositive motion deadline [*See* Docs. 19, 34]. Certainly, plaintiffs were well aware, since the filing of the federal action, that they needed to obtain Freebairn's deposition and that such would be critical to proving their case, including at the summary judgment stage. Nevertheless, they made no efforts to timely obtain Freebairn's deposition in support of their response to summary judgment.

Moreover, if plaintiffs had been diligently pursuing discovery, but had a good-faith need for additional time to depose Freebairn, they should have moved the Court to defer a ruling on summary judgment at the time that a response was due, when they necessarily should have known that they did not yet have this "critical" evidence [*See* Doc. 13, p. 4]. Furthermore, despite seeking, and receiving, an extension of the discovery deadline for purposes of obtaining Freebairn's deposition, there is no indication that plaintiffs ever actually attempted to take such deposition. Accordingly, the Court

21

views plaintiffs' request for additional time to obtain Freebairn's deposition as another delaying tactic.

As to the *Plott* factors, the Court finds that plaintiffs knew of the need to obtain Freebairn's deposition by at least April 2021, and likely earlier than that, as plaintiffs made some attempts to obtain Freebairn's deposition in February 2021 [Docs. 48-4, 48-5]. The first *Plott* factor thus weighs against plaintiffs.

The discovery period in this case has run its usual course. In other words, plaintiffs had the full discovery period to obtain Freebairn's deposition but failed to do so—and failed to even attempt to do so until less than 30 days remained in the discovery period. The third *Plott* factor thus weighs against plaintiffs.

For all the reasons discussed previously, the Court finds that plaintiffs were dilatory in attempting to obtain Freebairn's deposition. Accordingly, the fourth *Plott* factor weighs against plaintiffs.

There are no allegations that defendant in some way impeded plaintiffs from seeking a subpoena for Freebairn's deposition in this case. Accordingly, the fifth *Plott* factor does not support plaintiffs' request.

As to the second *Plott* factor, even assuming, without deciding, that Freebairn's deposition would change the outcome of this motion, this factor does not overcome the others that weigh strongly against granting additional time to obtain the deposition evidence.

22

Accordingly, plaintiffs' request for the Court to defer ruling on this motion for summary judgment and to permit additional time for plaintiffs to obtain Freebairn's deposition is **DENIED**.

### 2.    Counsel's Affidavit

Defendant argues that plaintiffs' counsel's testimony cannot be presented in admissible form at trial and Attorney Long is not competent to testify at trial while remaining counsel for plaintiffs [Doc. 39, p. 4].  As with the matter of the Freebairn Recording, despite a Court order instructing a response to this issue [Doc. 42], plaintiffs failed to address this matter in their supplemental brief [Doc. 46], and instead, addressed it in an untimely "addendum" to their supplement [Doc. 48], which the Court could reasonably treat as a waiver of opposition, based on failure to comply with the Court's orders.

Nonetheless, addressing the merits of defendant's argument, the Court notes that, while an attorney may be disqualified from testifying on behalf of his client due to the dangers inherent in the practice, an attorney is not incompetent to testify on behalf of his client.  *See French v. Hall*, 119 U.S. 152, 154–55 (1886) ("There is nothing in the policy of the law, as there is no positive enactment, which hinders the attorney of a party prosecuting or defending in a civil action from testifying at the call of his client.  In some cases, it may be unseemly . . . and the practice, therefore, may very properly be discouraged.  But there are cases, also, in which it may be quite important, if not necessary, that the testimony should be admitted to prevent injustice or to redress

23

wrong"); *United States v. Meisegeier*, No. ARMY 20021077, 2004 WL 5862913, at *2 (Army Ct. Crim. App. May 27, 2004) (stating that it is "well-settled" that trial counsel is competent to testify); *Cottonwood Ests., Inc. v. Paradise Builders, Inc.*, 624 P.2d 296, 299 (Ariz. 1981) ("[t]he law of evidence reveals no disability on the part of an attorney as to testifying in a proceeding in which he is also an advocate[,] [t]he attorney may be disqualified . . . because of the dangers and prejudice inherent in the practice"). Accordingly, it is not clear that counsel's affidavit must be excluded simply because it is the affidavit of plaintiffs' counsel.

Regardless, the Court notes that the sole purpose of counsel's affidavit appears to be the authentication of the Freebairn Recording [*See* Doc. 48, p. 6]. Specifically, plaintiffs' counsel states that, through discovery, he learned that Foster Electric had replaced part of the electrical outlet that is the subject of this litigation on April 4, 2019 [Doc. 35-11, p. 1]. He then called the company, learned the identity of Freebairn, who had completed the work, and interviewed Freebairn via telephone, which he recorded without Freebairn's knowledge [*Id.* at 1–2]. Outside of authenticating the Freebairn Recording, which the Court has already deemed inadmissible, this affidavit does not provide any useful information for purposes of summary judgment that is not encompassed in other evidence. Accordingly, the Court need not rule on the admissibility of the affidavit as consideration of such would not affect the outcome of the Court's ruling on summary judgment.

24

## B.    Substantive Issues

The Court now turns to whether a genuine issue of material fact exists as to plaintiffs' negligence claims, based on the remaining evidence presented.

"Business proprietors are not insurers of the patrons' safety" but they are "required to use due care under all the circumstances." *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). "To establish a prima facie case for premises liability based upon negligence, the plaintiff must prove (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant that was below the standard of care amounting to a breach of a duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Williams v. Linkscorp Tenn. Six, LLC*, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006).

Defendant argues that plaintiffs have not adequately established that: (1) it owed plaintiffs a duty relating to the electrical outlet cover; or (2) the electrical outlet cover caused Mrs. Stanley's fall [Doc. 30]. Because the Court finds that there is no genuine issue of material fact as to whether defendant owed plaintiffs a duty relating to the electrical outlet cover, the Court limits its analysis to this issue.

An owner or occupier of a premises has a duty to exercise reasonable care with regard to business invitees on the premises. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). This duty, does not, however "include the responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated[.]" *Id.* at 309 (internal quotation marks omitted). For an owner or occupier to be deemed negligent, "there must be some evidence that there was a dangerous or defective condition on the

25

premises. A jury cannot conclude that an owner or occupier failed to exercise reasonable care to prevent injury to persons on their property if there is no evidence of a dangerous or defective condition." *Nee v. Big Creek Partners*, 106 S.W.3d 650, 653–54 (Tenn. Ct. App. 2002). The existence of a legal duty is a question of law for the Court to decide. *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (1998); *Green v. Roberts*, 398 S.W.3d 172, 177 (Tenn. Ct. App. 2012).

The Tennessee Supreme Court has held that "an open and obvious danger does not automatically result in a finding of no duty and therefore no landowner liability." *Coln*, 966 S.W.2d at 37. Rather, "a risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and the gravity of harm posed by a defendant's conduct outweigh the burden upon the defendant to engage in alternative conduct that would prevent the harm." *Id.* But "[i]f the injury that occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact cause the injury, there is no negligence and no liability." *Green*, 398 S.W.3d at 178. And "[a] premises owner is not under a duty to warn of every aspect of a premises that may be unfamiliar." *Hunter v. Kroger Ltd. P'ship I*, No. W2017-01789-COA-R3-CV, 2018 WL 5793562, at *4 (Tenn. Ct. App. Nov. 5, 2018) (quoting *Steele v. Primehealth Med. Ctr., P.C.*, No. W2015-00056-COA-R3-CV, 2015 WL 9311846, at *10 (Tenn. Ct. App. Dec. 22, 2015)).

Defendant argues that the electric outlet cover is not an unreasonably dangerous condition such that it owed plaintiffs a duty to warn of it or remove it [Doc. 30, pp. 1, 4,

26

8]. Specifically, defendant argues that it was not foreseeable that a customer would trip over the outlet cover, given that: (1) the cover was selected, located, and installed by professional architects and contractors; (2) the City of Chattanooga found no code violations on the premises and issued a Certificate of Occupancy; (3) since opening in 2007, there had been no prior falls over the outlet cover; and (4) the outlet cover was unobstructed from view and varied in color from the surrounding floor [*Id.* at 12–13, 17–18]. Further, defendant contends that an electrical outlet cover plate is a minor aberration in the walking surface and not an unreasonable risk of harm according to common experience [*Id.* at 15–17]. Finally, defendant argues that Mrs. Stanley was not distracted, did not forget about the outlet, and did not choose to assume the risk because her needs outweighed the danger [*Id.* at 21–23].

Plaintiffs respond that there is ample evidence to establish disputed issues of material fact as to whether the outlet was unreasonably dangerous so as to give rise to a duty of care, although plaintiffs do not identify what evidence they rely upon for this assertion [Doc. 35, p. 12].[7] Plaintiffs argue that the Tennessee Supreme Court has held that a dangerous condition being "open and obvious" did not preclude liability if the risk of injury remained unreasonable [*Id.* (citing *Coln*, 266 S.W.2d 34)]. Moreover, plaintiffs argue that the outlet cover was not "open and obvious" to Mrs. Stanley under the

---

[7] Plaintiffs also argue that defendant's characterization of the protrusion as a "minor aberration" disregards both Freebairn's recorded statement and Williams's expert testimony [Doc. 35, pp. 12–13]. However, as discussed *supra*, both Freebairn's recorded statement and Williams' testimony are excluded from the Court's consideration for purposes of this summary judgment motion.

circumstances, because Mrs. Stanley was distracted and her vision obscured by Waters [*Id.* at 14–16].

Defendant cites several cases in support of its argument that the outlet cover at issue here was not a reasonably foreseeable danger [Doc. 30].

In *Lunsford*, the plaintiff tripped and fell over the weight scale at the pharmacy located in a Food City grocery store. *Lunsford v. K-VA-T Food Stores, Inc.*, No. 32019-01272-COA-R3-CV, 2020 WL 1527002, *1 (Tenn. Ct. App. Mar. 31, 2020). The appellate court determined that there was insufficient evidence to show that the store's management was on notice of the scale's potential to cause injury prior to the plaintiff's fall. *Id.* at *5. The court determined that, without prior notice of potential future harm, it cannot be said that it was foreseeable that either a customer or employee would one day trip over the scale, and thus, a duty could not be assigned on this basis. *Id.* The court also stated that, since plaintiff agreed nothing obstructed or detracted from her view of the scale, cases where a dangerous condition was found as a result of the plaintiff's distraction were irrelevant. *Id.* at *8. The court further noted that the evidence clearly shows that the scale's base was distinguishable from the surrounding floor tiles. *Id.* Thus, the court concluded that the scale was not a dangerous condition, and therefore, the defendant had no duty to warn of or remove the scale. *Id.* at *9.

In *Hunter*, the plaintiff tripped over a wooden pallet that was left in the center of the aisle in the freezer section of a grocery store by an employee who was stocking shelves further down the aisle at the time. 2018 WL 5793562, at *1. The plaintiff argued

that the store owed a duty to protect shoppers against the risks of harm posed by open and obvious conditions where it was reasonably foreseeable that the customers will be distracted by the store's merchandise and fail to notice the condition. *Id.* at \*5. The court of appeals acknowledged several cases imposing a special duty on the defendant store when it intentionally created a merchandise display that was meant to attract the attention of customers. *Id.* at \*6 (citing *McDavid*, 2017 WL 2954424, at \*7 and *Read*, 1998 WL 721084, at \*2). But the court found the facts of the case at bar distinguishable, noting that plaintiff admitted she was not browsing a sales display at the time of her fall, but was walking backwards to avoid the path of another customer. *Id.* at 7. The court ultimately concluded that a jury would have to engage in "speculation, conjecture, and guesswork" to find the pallet a dangerous condition, and therefore, affirmed the grant of summary judgment. *Id.* at \*8.

In *Cagle*, the plaintiff purportedly tripped over a curb in the parking lot of the Opryland Hotel. *Cagle v. Gaylord Ent. Co.*, No. M2002-00230-COA-R3-CV, 2002 WL 31728866, at \*1–2 (Tenn. Ct. App. Dec. 5, 2002). The court of appeals noted the following:

> The curb has no obvious physical or construction defects. There is no expert evidence that the curb or parking lot is designed or constructed in an unsafe, perilous or dangerous manner. There is no evidence in the record of other tripping accidents in the parking lot on this curb or in this location. There is no evidence in the record of any building code violation.

*Id.* at \*2. The court concluded that "[t]he proof in this record, like common experience, demonstrates that curbs like the one in question are ubiquitous. They are frequently

placed in commercial parking lots to direct traffic, to serve as parking stops, and to protect medians." *Id.* at *3. Citing the lack of evidence building code or standards violations, expert testimony, or evidence of prior tripping incidents, the court concluded that there was insufficient evidence that the curb was a dangerous condition. *Id.* at *3–4. The court noted that "[g]raceful athletes often trip on yardlines in football or on the foul line in basketball. People do trip and fall on conditions that are not unsafe." *Id.* at *3. The court further concluded that, because plaintiff had not established the duty or breach of duty components of her negligence claim, further analysis was unnecessary as to whether the foreseeability and gravity of the harm posed from the defendant's conduct, even if open and obvious, outweighed the burden on the defendant to engage in alternative conduct to avoid the harm. *Id.* at *4.

In *Green*, the plaintiff tripped over a steel post that was protruding above the surface of a parking lot by approximately ¾ of an inch. 398 S.W.3d at 174. The court of appeals found the case to be factually similar to another case, in which it affirmed a finding of no legal duty because "'the curb was visible and gave rise to no duty to warn and further that the plaintiff's failure to look where she was going was the cause of her accident rather than breach of any duty to warn that, theoretically, may have existed.'" *Id.* at 179 (quoting *Young v. First Bank of Tenn.*, No. E2010-01434-COA-Rd-CV, 2011 WL 332700, at *4 (Tenn. Ct. App. Jan. 28, 2011)) (emphasis omitted). The appellate court also noted that it had previously concluded, in a similar case that it was not "reasonably foreseeable" that the plaintiff "would fail to pay attention to where she was

30

walking." *Id.* (quoting *Norfleet v. Pulte Homes*, No. M2011-01362-COA-R3-CV, 2011 WL 5446068, at *5 (Tenn. Ct. App. Nov. 9, 2011)). The court noted that, in the case at bar, it was undisputed that the plaintiff failed to appreciate the condition of which she complains, and it was further undisputed that the area at issue was distinguishable from the surrounding area by color. *Id.* at 180. The court concluded that "a plaintiff in a premises liability case has a duty to see what is in plain sight." *Id.* at 181.

Plaintiffs point to several factual distinctions between these cases and the instant case [Doc. 35, pp. 12–14]. No doubt, none of the cases presented has identical facts to the instant case, as is typical of any case. But, despite some factual distinctions, the Court finds that the legal principles set forth in this case law compels a conclusion that defendant had no duty to warn or protect with regard to the outlet cover at issue here, because it was not reasonably foreseeable that a customer would trip on the outlet cover.

Both Mr. and Mrs. Stanley admit that the outlet cover is clearly visible and is a different color than the surrounding carpet [Doc. 29-5, p. 8; Doc. 29-6, p. 4]. They also both admit that there is nothing that would prevent an observer from seeing the outlet cover if they looked down [Doc. 29-5, p. 9; Doc. 29-6, pp. 5–6]. Moreover, they agree that the outlet cover could have been avoided if seen by a person walking through the mattress store [Doc. 29-5, p. 10; Doc. 29-6, pp. 5–6]. The Court's review of the photograph of the outlet at the time of Mrs. Stanley's fall confirms that the outlet is clearly visible, is easily distinguishable from the surrounding carpet, and is not obstructed by any of the surroundings [Doc. 29-7]. Although the open and obvious nature of the

31

outlet cover may not, standing alone, determine whether defendant owed a duty with regard to any danger, it is a substantial factor in determining whether the danger presented by the outlet cover was reasonably foreseeable. *See Lunsford*, 2020 WL 1527002, at *8 (noting that nothing obstructed or detracted from plaintiff's view of the scale and the scale's base was distinguishable from the surrounding floor tiles).

Additionally, the evidence establishes that there had been no other falls inside defendant's store since its opening in 2007, and there had been no incidents involving the outlet cover [Doc. 29-3, p. 16; Doc. 29-4, p. 4]. This fact also weighs heavily in favor of a finding that it was not reasonably foreseeable that the outlet cover presented a danger. Absent any prior accidents on this open and obvious condition, there was no reason for defendant to believe that a customer might trip over the outlet in the future. *See Cagle*, 2002 WL 31728866, at *2 (noting the lack of evidence of other tripping accidents on the curb at issue).

Furthermore, there is no evidence that the outlet cover was designed or constructed in a dangerous manner or any evidence of building code violations. *See id*. (noting the lack of expert evidence that the curb was designed or constructed in an unsafe manner or any evidence of a building code violation in determining that the curb at issue was not a dangerous condition). To the contrary, there is evidence in the record that, in 2007, the City of Chattanooga issued a Certificate of Occupancy in which it certified that, at the time, the building was in compliance with the applicable building codes and

32

ordinances [Doc. 29-1]. This also weighs in favor of a finding that defendant could not have reasonably foreseen that a customer would trip over the outlet cover in the floor.

Although plaintiffs' counsel argues that Mrs. Stanley's view of the outlet cover in the floor was obstructed from view by Waters walking in front of her, this argument is belied by Mrs. Stanley's own deposition testimony. Specifically, Mrs. Stanley testified that there was nothing that she knew of that would have prevented her from seeing the outlet cover prior to her fall [Doc. 29-5, p. 9]. Moreover, as to plaintiffs' argument that it was Waters that allegedly obstructed Mrs. Stanley's view of the outlet cover, she testified in her deposition that her husband was directly in front of her, and Waters was in front of Mr. Stanley [*Id.* at 11]. Accordingly, even if Mrs. Stanley's view of the outlet cover was somehow blocked by someone walking in front of her, contrary to her deposition testimony [*see id.* at 9], her view would have been blocked by Mr. Stanley, not Waters. And plaintiffs have presented no argument as to how defendant could be deemed to have a duty to protect from an open and obvious outlet cover in the floor when an individual's view of such was obstructed by a member of their own family walking in front of them.

Ultimately, as the *Green* Court noted, it is not reasonably foreseeable that a plaintiff will "fail to pay attention to where she [is] walking." 398 S.W.3d at 178 (quoting *Norfleet*, 2011 WL 54460608, at *5). And "[p]eople do trip and fall on conditions that are not unsafe." *Cagle*, 2002 WL 31728866, at *3. Here, there is insufficient evidence to create a genuine issue of material fact as to whether the outlet cover at issue was a dangerous condition, and whether, therefore, defendant owed

33

plaintiffs a duty with regard to that condition. Accordingly, defendant's motion for summary judgment [Doc. 29] will be **GRANTED**.

## IV.    Conclusion

For the reasons set forth above, defendant's motion for summary judgment [Doc. 29] will be **GRANTED**. Plaintiff's claims will be **DISMISSED**. A separate order will follow.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

34